## FOREIGN CONSUL.

---

PACKARD v. DAVIS, 6 Wend. 327–334.
DAVIS v. PACKARD, 10 Wend. 50–74.
In S. Ct. of U. S. 6 Peters, 41–50, 7 Peters, 276–286.

CHARLES A. DAVIS, the plaintiff in error, was sued in the Supreme Court on a *recognizance of bail*, entered into by him in a civil suit. A verdict was found, and judgment rendered against him thereon. He then removed the record into the Court of Errors, and assigned for error, that at the time of the commencement of the suit against *him*, he was, and ever since has been, *Consul General* of the King of Saxony, in the United States, duly admitted, &c., by the President of the United States, and ought not to have been impleaded in the Supreme Court of the state of New York, but in the District Court of the United States for the Southern District of New York, or in some other District Court of the United States, and that the Supreme Court had not jurisdiction, &c.. Defendant in error pleaded in *nullo est erratum*, &c.

The Court of Errors, (the Chancellor, Walworth, delivering the opinion,) held: 1. That the suit on the *recognizance* was a mere incident to the original suit, and therefore the Supreme Court had jurisdiction without regard to the official character of the defendant. But if not—then 2. That the party by

pleading in chief to the suit, and calling for a decision on the merits, without setting up his privilege, had admitted the jurisdiction of the court; and 3. That the Court of Errors will not entertain jurisdiction to reverse a judgment of the Supreme Court for a mere *error in fact*, which might have been tried there upon a writ of error *coram nobis*.

The Chancellor says: "I am therefore satisfied that this court never had jurisdiction to reverse a judgment of the Supreme Court for *error in fact*, unless the question had first been examined and decided upon a writ of error, *coram nobis*, in that court, 2 Wend. 157, 4 id. 175.

The Court of Errors being *unanimously* of this opinion, the judgment of the Supreme Court was affirmed accordingly. Whereupon the plaintiff in error, sued out a writ of error to the Supreme Court of the United States. At the January term of that year, 1832, a motion was made to dismiss the writ of error, "for want of jurisdiction in that court." 6 Peters 41–50. The case is there entitled "*Charles A. Davis, Consul General of the King of Saxony*, plaintiff in error, *v. Isaac Packard, Henry Disdier, and William Morphy*, defendants in error.

Thompson, J., delivered the opinion of the court.

"The motion to dismiss the writ of error, is founded and resisted on affidavits of what took place in the Court of Errors of New York, on a motion there made to dismiss the writ of error to the Supreme Court of that state; and the opinion of the Chancellor assigning his reasons for affirming the judgment of the Supreme Court, has also been laid before us.

"We can not enter into that question at all; whatever forms no part of the record sent up to this court, must be entirely laid out of view.

"The question before this court is not, whether the judgment of the Supreme Court in New York, was correct. It is the judgment of the Court for the Correction of Errors, that is to be reviewed here. From the record, then, we are necessarily left to conclude that the state court, (the Court of Errors,) assuming or admitting the fact that Davis was Consul General, as alleged in his assignment of errors, yet held it did not exempt him from being sued in a state court; which

brings the case within the 25th section of the judiciary act, the decision being against the exemption claimed under a law of the United States." The motion to dismiss the writ of error was accordingly *denied.*

The writ of error was afterward brought on for argument at the January term, 1833, and the cause heard and decided; 7 Peters, 276–286.

The opinion of the court was delivered by Mr. Justice Thompson, who after stating the case, says:

"The principal difficulty in this case, seems to grow out of the *manner* in which the exemption set up by the plaintiff in error, was brought under the consideration of the state court, and in a right understanding of the ground on which the court decided against it.

"The record shows no objection to the time and place, when and where this matter was set up."—"The only answer is that *there is no error ; because it nowhere appears in the record, that the said C. A. D. ever was Consul of the King of Saxony.* This was no answer to the assignment of errors. Matter assigned in the appellate court as *error in fact,* never appears upon the record of the inferior court. If it did it would be error in law. But the answer to the assignment of errors, prays that the court may proceed to examine the record, &c., and *the matters aforesaid above assigned for error.*

" Under this informal state of the pleadings in the Court for the Correction of Errors, how is this court to view the record ? If it had been intended to say that it was not error, because not pleaded in abatement, it would probably have been so said."—" As the record contains no intimation that this matter was not set up in proper time, the conclusion would seem irresistible, that the Court for the Correction of Errors considered the matter itself, set up in the assignment, as insufficient to reverse the judgment. This being the only question decided in that court, is the only question to be decided here; and viewing the record in this light, we can not but consider the judgment of the state court in direct opposition to the act of Congress, which excludes the jurisdiction of the state courts in suits against consuls.

" But if the question was open for consideration here,

whether the privilege claimed was not waived by omitting to plead it in the Supreme Court, we should incline to say it was not. If this was to be viewed merely as a personal privilege, there might be some grounds for such a conclusion; but it can not be so considered. It is the privilege of the country or government which the consul represents. This is the light in which foreign ministers are considered by the law of nations, and our constitution and laws seem to put Consuls on the same footing in this respect."

Judgment <em>reversed</em> accordingly.

A MANDATE from the Supreme Court of the United States, in the usual form, in the name of the President of the United States, to the President of the Senate of the state of New York, the senators, Chancellor, &c., containing the judgment of *reversal*, and commanding them "that further proceedings be had as according to right and justice, and in conformity to the opinion and judgment of said Supreme Court of the United States, and the laws of the United States, ought to be had, &c., was produced to the court on the behalf of the plaintiffs in error.

On presenting this mandate to the Court of Errors, the counsel for the plaintiff in error moved that a rule be entered reversing the judgment of this court and of the Supreme Court. At the same time a motion was made by the counsel for the defendants in error, *either* that the rule to be entered on the filing of the mandate should declare that they had not jurisdiction to reverse the judgment of the Supreme Court in such case, and therefore declined to do so—*or* that the court in case they should reverse their own judgment of affirmance, in obedience to the mandate, should at the same time enter an order *for the dismissal* of the writ of error *with costs.*

This question was elaborately argued by the Chancellor and Justice Sutherland, in favor of a judgment simply reversing their own previous judgment, and leaving that of the Supreme Court in force. Seward, senator, delivered an opinion *contra*. The court was induced to adopt the form of the judgment drawn up, and offered by the Chancellor, *reversing* the judgment of the Court of Errors itself, and leaving that

of the Supreme Court in full force; also *quashing the writ of error* from the Supreme Court to the Court of Errors, with costs to the defendant in error, and remitting the proceedings to the Supreme Court.

In the affirmative for this judgment, 20, *contra* 3.

---

☞ It can not be denied that this was a virtual disobedience to the mandate. It is true Mr. Justice Sutherland says " that there is no disposition to obstruct or evade the judgment of the Supreme Court of the United States," but the rule or order entered is nothing more or less than a refusal to treat the judgment of the Supreme Court as *reversed* on the question of jurisdiction, and to still maintain that the defendant in error should have another opportunity to present this question to the Supreme Court of the United States.

See rule for judgment and opinions, 10 Wend. 52–74.